IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:17-cr-85-HEH |
| ) | |
| TIMOTHY SCOTT WENK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Granting the United States' Motion for Entry of a Second Order of Forfeiture and Denying Defendant's Motions)

THIS MATTER is before the Court on the United States' Motion for Entry of a Second Order of Forfeiture (the "Motion," ECF No. 138), filed on November 4, 2022. The United States ("Government") seeks the forfeiture of Defendant Timothy Scott Wenk's ("Defendant") property contained in the Defendant's inmate trust account as substitute assets in partial satisfaction of this Court's Judgment entered on July 12, 2018 (ECF No. 79). Specifically, the Government seeks $12,195.95 of the $13,895.95 in Defendant's inmate trust account. (Mot. at 12.) Defendant filed his Responses in Opposition to the Government's Motion on November 25, 2022. (ECF Nos. 139, 140.) On the same day, Defendant also filed a Motion to Pay Restitution (ECF No 141) seeking to cap his restitution payments while incarcerated. Additionally, prior to the Government filing its Motion, Defendant filed a Letter Motion deemed as an "Emergency Request" on October 6, 2022 ("Def.'s Emergency Request," ECF No. 135) seeking notice and opportunity to be heard regarding a freeze placed on the funds within his inmate trust account. For the reasons set forth below, the Court will grant the Government's Motion

and will deny Defendant's Emergency Request as moot. The Court will also deny Defendant's Motion to Pay Restitution.

## Background

On December 7, 2027, Defendant pled guilty to Counts I and XII[1] of a sixteen count Superseding Indictment and entered into a plea agreement with the United States.[2] (Plea Agreement, ECF No. 43.) Through the plea agreement, Defendant was made aware that restitution would be owed in his case and that forfeiture of assets was part of the sentence this Court imposed. (Plea Agreement at 6–7.) On July 12, 2018, this Court sentenced the Defendant to 144 months of incarceration on each count, to be served concurrently, and imposed three years of supervised release. (J. at 1.) Additionally, the Court entered a Restitution Order (ECF No. 75) and an Order of Forfeiture (ECF No. 77), both signed by Defendant, in the amount of $606,044.99.

On October 6, 2022, Defendant filed a Letter Motion asserting that the Government placed a "freeze" on all the funds located within Defendant's inmate trust account. He argues the freeze affecting his entire account was done without notice and in violation of his due process rights under the Fifth Amendment. (Def's Emergency Request at 1.) Since he began incarceration, Defendant has saved $13,895.95, earned through Defendant's participation in various prison work programs. (Gov't's Mot. at 12.)

---

[1] Defendant pled guilty to Wire Fraud, in violation of 18 U.S.C. § 1343. (Plea Agreement at 1.)

[2] On December 7, 2017, as part of his plea colloquy by the Court, Defendant acknowledged that he had read over and understood the plea agreement he signed. (Minute Entry, ECF No. 42.)

2

In addition to prison work programs, Defendant enrolled in the voluntary Inmate Financial Responsibility Program ("IFRP"), which is designed to help inmates that owe financial obligations develop a financial plan for repayment and monitor the inmate's progress towards that goal. (Def.'s Emergency Request at 1–4.) According to the verified Case Inquiry Report, Defendant has paid $4,895.76 in restitution to date. As to Defendant's forfeiture obligation, which is distinct and wholly separate from Defendant's restitution obligation, Defendant has made no payments at this time. (Gov't's Mot. at 4.)

## **Applicable Standards**

Pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure, on the government's motion, the Court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that "is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1). The Government seeks the substitute assets under 21 U.S.C. § 853(p), which applies here because of the provisions of 28 U.S.C. § 2461(c). *See United States v. Blackman*, 746 F.3d 137, 142–143 (4th Cir. 2014) (stating that, under § 2461(c), the procedures of 21 U.S.C. § 853 "apply to all stages of a criminal forfeiture proceeding"). Under § 853(p), before a court can order forfeiture of substitute assets, it must find that "as a result of any act or omission of the defendant," the original forfeitable property is unavailable because:

> (A) [it] cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty.

3

21 U.S.C. § 853(p)(1)(A–E). Each of these prerequisites are disjunctive and where any one of them is satisfied, "'the court shall order the forfeiture of *any other property of the defendant*, up to the value of' the property it substitutes." *United States v. Quincy*, 586 F. Supp. 3d 512, 516 (E.D. Va. 2022) (quoting 21 U.S.C. § 853(p)(2), emphasis in original). The Fourth Circuit has also explained, "[c]ourts interpret [§ 853(p)] liberally so as to thwart efforts by a defendant to circumvent the economic impact of an anticipated criminal forfeiture sentence." *United States v. Alamoudi*, 452 F.3d 310, 316 (4th Cir. 2006).

Here, because Defendant stipulated that the prerequisites of 21 U.S.C. § 853(p) were satisfied in this case (Plea Agreement at 7–9), the Court finds that the § 853(p) requirements have been met and the Government may seek the forfeiture of the substitute assets.

Once the Government demonstrates that the property is forfeitable under Rule 32.2(e)(1), the court must either enter an order forfeiting that property, "or amend an existing preliminary or final order to include" the substituted property. Fed. R. Crim. P. 32.2(e)(2)(A). The Government now seeks by Motion to Enter a Second Order of Forfeiture specifically defining the substitute assets at issue here.

The Government is seeking the forfeiture of "$12,195.95 contained in the inmate trust account of Timothy Scott Wenk (Reg. No. 39230-083) at FCI Allenwood Low." (Gov't's Mot. at 4.) The Fourth Circuit has held that "there are no limits on what property may be substituted for proceeds." *United States v. Manlapaz*, 825 F. App'x 109,

4

117 (4th Cir. 2020). The Government asserts that the proceeds from this asset will be applied towards Defendant's $606,044.99 monetary forfeiture judgment amount. (*Id.*) Furthermore, though the Government is seeking to collect the subject funds through asset forfeiture, it intends to use the restoration process the Fourth Circuit described in *Blackman* in this case, provided Defendant qualifies.[3] *See Blackman*, 746 F.3d at 143 (stating "the government has the discretion to use forfeited assets to restore a victim whom the defendant has failed to compensate").

## Analysis

First, Defendant attempts to argue that the Government's seizure of funds from his inmate trust account ultimately amounts to a double recovery and is improper because he has continually made payments toward his restitution through the IFRP program. (Def.'s Emergency Request at 1.) The Court commends and acknowledges that Defendant has made continued progress toward his restitution, having paid nearly $5,000 to date since his incarceration. However, "restitution and forfeiture are distinct remedies, ordering both in the same or similar amounts does not generally amount to a double recovery." *Blackman*, 746 F.3d at 143; *see also United States v. Moss*, 34 F.4th 1176, 1194 (11th Cir. 2022) ("Restitution and forfeiture serve different goals. The focus of restitution is on the victim, but forfeiture focuses on the defendant." (citing reference omitted)). Here,

---

[3] Although the Government concedes that Defendant appears to presently qualify for restoration, the ultimate determination as to whether restoration will be granted or denied rests with the Money Laundering Asset Recovery Section of the Department of Justice.

5

Defendant agreed to and was ordered to both pay restitution in the amount of $606,044.99 and to pay the exact same amount under the Forfeiture Order. (J. at 1.) Thus, because he has not made a payment towards the Forfeiture Order, Defendant's payment of restitution does not affect the specific amount that he owes under the Forfeiture Order, which is still for the full amount of $606,044.99.

Although these two remedies are distinct from each other and serve different purposes, "the two remedies need not be at cross-purposes." *Blackman*, 746 F.3d at 143. "Although it is not bound to do so, the government has the discretion to use forfeited assets to restore a victim whom the defendant has failed to compensate." *Id.* As the Government stated, it is seeking the $12,195.95 substituted property from Defendant's inmate trust account to be applied to Defendant's forfeiture obligation through the Government's forfeiture powers. If Defendant is found to qualify, the Government asserts that it intends to use the restoration process to make Defendant's victims whole.

In response in Opposition to the Government's Motion, Defendant claims that due to the freeze of his inmate trust account, he is indigent and seeks the appointment of counsel for purposes of opposing the Government's seizure of his funds. (Resp. in Opp. at 1, ECF No. 139.) A substitute asset proceeding is simply a means of collecting on the original forfeiture judgement. *United States v. Reed*, 924 F.2d 1014, 1017 (11th Cir. 1991). "'Because such a proceeding does not increase the quantum of punishment imposed on a defendant, no right to appointed counsel exists under the [S]ixth [A]mendment.'" *United States v. Saccoccia*, 561 F.3d 502, 505 (1st Cir. 2009) (citing

6

*Nichols v. United States*, 511 U.S. 738, 746–49 (1994). Thus, because this is a substitute asset proceeding that is not increasing the quantum of punishment imposed on Defendant, he is not entitled to the appointment of counsel. Defendant's request for appointment of counsel will be denied.

Defendant also argues that the freezing of his inmate trust account was a violation of due process, as he was not provided notice of the freeze or seizure and was not provided the opportunity to oppose the freeze. (Def.'s Emergency Request at 1.) However, Defendant did respond to both the freeze and the Governments Motion through multiple opposition letters. Additionally, Defendant stated that he went over the entire Plea Agreement with his attorney, and that he read and understood what he was signing. (Minute Entry at 1.) The Plea Agreement specifically put Defendant on notice, and he affirmatively agreed, that assets he was in possession of at the time and any possible future assets might be subject to forfeiture. (Plea Agreement at 7–9.)

Notice and an adequate opportunity to oppose the Government's Motion was given to Defendant, as the Court considered all filings Defendant made in relation to the freeze and the Forfeiture Order. Moreover, the funds were not transferred or disposed of, they were merely placed on hold until this Court reached a decision on the issue. Where the government seeks a forfeiture restraining order, courts have held that the government may do so on an *ex parte* basis. *See United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475 (5th Cir. 2007) (en banc) ("[A] court may issue a restraining order without prior notice or a hearing.") Nonetheless, because Defendant was provided the

7

opportunity to respond to the Government's Motion, and the Government was not required to provide notice of the freeze, the Court finds that there was no due process violation.

Lastly, Defendant emphasizes the alleged inequity in the Government seeking forfeiture of his account money, despite his continued payments of restitution. He argues that this will not allow him to care for his daughter and will discourage his continued efforts to pay restitution in the future. As a threshold matter, equitable considerations raised by defendants do not enter the court's forfeiture analysis. *See Blackman*, 746 F.3d at 143 (finding error in the district court's reasoning when it believed that it could withhold forfeiture on the basis of equitable considerations). Moreover, Defendant's requirement to pay his restitution and forfeiture obligations are legal duties he willingly entered into as consequences of the harm Defendant's illegal conduct caused his victims. Whether Defendant is motivated or not to pay back his restitution and forfeiture obligations as a result of this forfeiture are irrelevant and will not change Defendant's responsibility for those legal duties.

While the Court applauds Defendant's interest and intention to support his daughter's needs, and hopes Defendant will continue to do so, the Government seeking to forfeit a portion of his inmate trust account will not entirely diminish Defendant's ability to support either himself or his daughter. The Government seeks to substitute $12,195.95 of Defendant's $13,895.95 in his inmate trust account amount as a part of the forfeiture order. This leaves $1,200 for child support and $500 to accommodate Defendant's

8

inmate commissary needs. Although equity considerations do not apply, it is clear the Government considered Defendant's needs and obligations when considering the amount of forfeiture. Thus, the Court will deny Defendant's Motion to Pay Restitution and will grant the Government's Motion for Entry of a Second Order of Forfeiture.

## Conclusion

For the foregoing reasons, the Court will grant the Government's Motion for Entry of a Second Order of Forfeiture (ECF No. 138). The Court will deny Defendant's Emergency Letter Motion (ECF No. 135) as moot and will deny Defendant's Motion to Pay Restitution (ECF No. 141). An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 16, 2022
Richmond, VA